[Crim. No. 5397.   Second Dist., Div. Three.   Mar. 23, 1955.]

In re BETTY SHORT HOFMANN, on Habeas Corpus.

Gordon W. Levoy and Leonard F. Herzog for Petitioner.

Harold W. Kennedy, County Counsel (Los Angeles), and Richard L. Riemer, Deputy County Counsel, for Respondent.

THE COURT.—Upon petition of one of the attorneys for Betty Short Hofmann representing that the latter is confined at Kimball Sanitarium in Los Angeles County as a mental patient under an order of commitment of the superior court, we issued a writ of habeas corpus to which return has been filed and upon which a hearing has been held.   ■■■   We conclude that the petitioner should be ordered released because of irregularities in the proceedings leading up to her commitment.   Pertinent provisions of section 5050, Welfare

and Institutions Code, are set out in the margin.[1] The proceedings may be outlined as follows. The son of petitioner filed an affidavit which set forth facts sufficient to warrant examination into the mental health and condition of the patient but failed to allege any facts showing necessity for the immediate apprehension of his mother, that is to say, no facts were alleged from which it would appear that the condition of Mrs. Hofmann was such that she was likely to injure herself or others if not placed under restraint. At the same time there was presented certificate of a physician that he had several times examined Mrs. Hofmann, the last time on February 4, and which stated: "It is my impression that she is in a state of paranoid reaction and that she should be observed in Psychiatric Unit #3 LACGH." Upon the basis of the affidavit and the certificate an order was made by a judge of the superior court which recited that Mrs. Hofmann was likely to injure herself or others if not immediately hospitalized and detained and which commanded that she be forthwith apprehended and detained for examination and hearing, pending the further order of the court. Mrs. Hofmann was taken from her home and immediately placed in the Psychiatric Unit of County General Hospital where she remained until February 9 when she was committed by order of court to the care and custody of the counselor of mental health to be placed in Kimball Sanitarium, there to remain under the supervision of the counselor of mental health until

[1] "'If the judge is satisfied that the person is sufficiently mentally ill that examination should be made into the state of his mental health, the judge shall issue an order notifying the person to submit to examination at such time and place as designated by the judge. The order for examination shall be served as provided in section 5050.2 by a peace officer or counselor in mental health of the county at least one day before the time fixed for the examination. The person shall be permitted to remain in his home or other place of domicile pending the examination, and shall be permitted to be accompanied by one or more of his relatives or friends to the place of examination.

"'If it appears to the judge from a certificate of a licensed physician and surgeon dated not more than three (3) days prior to the presentation of the petition and filed with the court, certifying that he has examined the person and is of the opinion the person is mentally ill, and because of his illness is likely to injure himself or others if not immediately hospitalized or detained, or if it otherwise affirmatively appears that said person is likely to injure himself or others, the judge may issue and deliver to a peace officer or counselor in mental health of the county an order directing that the person be forthwith detained in a place designated in the order for examination and hearing as provided in this chapter. The judge may issue a similar order if the person fails or refuses to appear for examination when notified. [Amended by Stats. 1953, ch. 1291, § 1.]'"

further order of the court. The order for the examination and detention of Mrs. Hofmann was on a printed form consisting of an entire page of closely typed material comprising several paragraphs and it contained what purported to be a notice to the person involved of a right to a hearing, to produce witnesses and to be represented by counsel. The printed form was designed to be used in a number of different situations and if read as a whole it would be meaningless. If care was taken to delete the paragraphs and other statements inappropriate to the proceeding in hand, it could constitute an intelligible notice to the person addressed. Likewise, the notice of hearing and of the right to be represented by counsel, the latter of which is in small print at the bottom of the notice, would, if read by a person of intelligence and understanding be sufficient to advise him of his rights. However, portions of the writing were stricken out by heavy pencil lines in a manner which rendered it impossible to determine what was intended to be stricken and what to be retained. The portion containing the statement as to the right to notice, right to produce witnesses and to be represented by counsel was so emasculated that it might well indicate that the whole thereof was intended to be stricken and rendered ineffective.

In no other manner nor at any other time was any attempt made to inform Mrs. Hofmann of her right to counsel. It appears from her affidavit attached to the petition that upon numerous occasions she requested of hospital attendants that she be given an opportunity to communicate with her attorneys; no attention was paid to these requests and she was unable to communicate with them.

On February 7 an order was made fixing 9:30 a. m., February 9, 1955, for hearing and examination in department 54 of the court in the General Hospital and Mrs. Hofmann received notice thereof. At the time set for the hearing Mrs. Hofmann was in a room·which had been assigned to her. There appeared at her room a judge of the superior court, two physicians, a person identified as a mental health counselor, the husband and son of Mrs. Hofmann. It was not announced that a hearing was to take place. No witnesses were then sworn; statements of ·two physicians were received and taken by a court reporter. The physicians signed a certificate, the purport of their statements and certificate being that the patient was confused, illogical, suffering from a delusion she had special powers and evidenced a suspicious nature, all of which indicated a chronic brain syndrom for which treatment

in a sanitarium was recommended. Mrs. Hofmann did not then request that she be allowed to have an attorney present but it is clear from the transcript of the proceedings that she at no time was advised and that she did not understand that a hearing was taking place or that there would not be a proceeding in court at a later time. She was not questioned in a manner that would have enabled the court to determine her apparent mental state and when she undertook to express herself was interrupted and prevented from making whatever statements or explanation she desired to make. Although Mr. Hofmann and the son were present they gave no testimony concerning the patient's mental condition. The hearing was terminated abruptly and petitioner was taken to the sanitarium. She was then given shock treatments over her objection, and although she again requested an opportunity to telephone her attorney, permission was refused until eight days after the hearing.

As previously stated the notice of the hearing was given but two days before the time set therefor; this notice would have been sufficient if the hearing had been held in the courtroom, but was insufficient for a hearing held at another place since the statute requires five days' notice to the patient of the time and place of such a hearing unless notice be waived by the patient. (Welf. & Inst. Code, § 5052.)

Under the circumstances of the case, and especially because Mrs. Hofmann did not realize that a hearing was taking place, we think the hearing in question was not in a courtroom, that Mrs. Hofmann did not waive notice of the hearing, and that there was a failure to observe the requirement for five days' notice prescribed by section 5052 of the Welfare and Institutions Code. As we read section 5050 of the code, a patient shall be permitted to remain in his home or other place of domicile pending the examination in the absence of a showing that because of his illness he is likely to injure himself or others if not immediately hospitalized or detained, which showing may be made either by certificate of a physician dated not more than three days prior to the presentation of the petition or by other affirmative evidence. There was no evidence before the court of the existence of facts which would have warranted the immediate hospitalization or detention of Mrs. Hofmann. She had a right to remain in her home pending the examination. Deprivation of this right affected adversely her interests in all the subsequent proceedings.

The authority of the court in such matters is statutory.

762

(*Matter of Lambert,* 134 Cal. 626, 630 [66 P. 851, 86 Am.St. Rep. 296, 55 L.R.A. 856] ; *In re Crowley,* 95 Cal.App. 219, 221 [272 P. 787] ; *Matter of Application of Harcourt,* 27 Cal.App. 642, 643 [150 P. 1001].) The right of the patient to remain at liberty with an opportunity to consult with relatives and friends, to receive legal advice, and in other ways prepare for the examination and hearing, is one that should be scrupulously observed by the authorities. The law not only specifies the conditions under which immediate detention is permitted, but provides that if such conditions are not shown to exist the patient may remain at home with family and friends. It is unnecessary to repeat the particulars in which Mrs. Hofmann's freedom of action was interfered with as a result of her confinement and her failure to comprehend what was going on. The statute recognizes the right to representation by counsel. Petitioner was deprived of that right. There was, in our opinion, not even substantial compliance with the prescribed procedure ; we can only conclude that petitioner's present confinement is illegal.

It is ordered that Mrs. Hofmann be released from confinement.