[Crim. No. 7255. In Bank. May 21, 1963.]

In re JAMES G. RANER on Habeas Corpus.

James G. Raner, in pro. per., J. Perry Langford, under appointment by the Supreme Court, and Edgar G. Langford for Petitioner.

Stanley Mosk, Attorney General, and Gordon Ringer, Deputy Attorney General, for Respondent.

SCHAUER, J.—This matter is before us on an order to show cause issued upon an application for writ of habeas corpus filed in propria persona by petitioner James G. Raner, who is confined as a narcotics addict for treatment in the California Rehabilitation Center under an order of commitment entered by the superior court purportedly pursuant to article 3, chapter 11, title 7, of part III of the Penal Code (§§ 6500-6510, which deal with commitment to that facility of "persons not charged with a crime"). We appointed counsel to represent petitioner in these proceedings.

In *In re De La O* (1963) *ante,* 128 [28 Cal.Rptr. 489, 378 P.2d 793], and *In re Butler* (1963) *ante,* 157 [28 Cal.Rptr. 508, 378 P.2d 812], we upheld as constitutional chapters 11 and 12, title 7, of part III of the Penal Code, including therefore the particular statutory provisions claimed to constitute the authority under which the present petitioner was committed to the California Rehabilitation Center. Citing *Robinson* v. *California* (1962) 370 U.S. 660 [82 S.Ct. 1417, 8 L.Ed. 2d 758], petitioner first attacks the constitutionality of such provisions on substantially the same grounds as those discussed in *In re De La O, supra.* For the reasons set forth in our opinion in that case, these contentions are without merit.

Far more serious as to the integrity of the instant commitment are petitioner's contentions that the procedural safeguards set up by the subject statute were disregarded in his case and hence that he was committed illegally and without due process of law. The record supports petitioner's allega-

tions in this respect, and indicates a seeming lack of concern on the part of the State for a number of fundamental procedural rights provided by this legislation. The statute itself is not wholly free from constitutional doubts but in *In re De La O* (1963), *supra, ante,* pp. 128, 149 [13], we resolved those doubts in favor of upholding the enactment; yet while the Legislature may, in uncharted areas such as narcotic addict rehabilitation, experiment to a certain degree and within constitutional limits, the unauthorized "experimentation" and procedurally distorted application (amounting to a virtual rewriting) of the statute which are shown in the record at bench[1] cannot be tolerated.

### Illegal Detention Prior to Hearing.

Petitioner's commitment proceeding began on July 11, 1962, when the district attorney filed a "Petition for Commitment" in the superior court purportedly pursuant to Penal Code section 6500.[2] On the same day a warrant of apprehension issued out of the superior court, commanding *inter alia* that after apprehension petitioner "be kept at Narcotic Rehabilitation & Treatment Prereception Center pending hearing." Petitioner alleges that he was served with this warrant and was booked in the Los Angeles County Jail on July 13; the People's return admits this allegation, and

---

[1]See, e.g., the inappropriate form "Order for Examination" and "Notice of Right to Hearing" which is incorporated in the return to the order to show cause. That form indicates on its face that it was printed in 1956 for use in mental illness procedures; its total inadequacy for use in the subject narcotic rehabilitation proceeding is hereinafter depicted.

[2]Section 6500 provides: "A sheriff, chief of police, minister, physician, probation officer, a relative, friend or any other person who believes that a person is addicted to the use of narcotics or by reason of the repeated use of narcotics is in imminent danger of becoming addicted to their use or any person who believes himself to be addicted or about to become addicted may report such belief to the district attorney who may petition the superior court for a commitment of such person to the Director of Corrections for confinement in the narcotic detention, treatment and rehabilitation facility."

The district attorney's petition for commitment in the present case simply stated that "a person [unidentified] has reported to the [district attorney] that he believes the above named person [petitioner Raner] within this County is addicted to the use of narcotics or by reason of the repeated use of narcotics is in imminent danger of becoming addicted to their use.

"Wherefore, The District Attorney of Los Angeles County respectfully requests this Court to take such action and conduct such proceedings as provided in Article 3, Chapter 11, Title 7, Part 3 of the Penal Code of the State of California."

further states that "petitioner was taken from thence to Biscailuz Center, Los Angeles Sheriff's detention facility on July 16, 1962, where he was housed in a barracks with other persons awaiting hearings upon Petitions for Commitment, and was returned to the County Jail on July 17, remaining there until July 26." The commitment hearing was held on July 19, and on July 26 petitioner was transferred to Chino.

The detention of petitioner for the six days between his apprehension and his commitment hearing was illegal and without statutory authority. Penal Code section 6502 is explicit in providing that "The court may . . . order that the person [sought to be committed] be confined pending hearing in a county hosital or other suitable institution *if the petition [for commitment] is accompanied by the affidavit of a physician alleging that he has examined such person within three days prior to the filing of the petition and has concluded that, unless confined, such person is likely to injure himself or others or become a menace to the public."* (Italics added.) Petitioner alleges that he was *not* examined by a physician "within three days prior to the filing of the petition [for commitment]"; the People's return admits this allegation, and further admits that "the Petition for Commitment was not accompanied by a physician's affidavit" as provided for in section 6502.[3]

The People take the position that the illegality of petitioner's detention prior to hearing[4] did not affect the legality of the subsequent order of commitment. The People first argue that "the unlawfulness of a defendant's apprehension has no bearing on the merits" of the charge and does not preclude maintenance of the proceeding for commitment (citing *People v. Hernandez* (1961) 197 Cal.App.2d 25, 29 [1] [17 Cal. Rptr. 20]); but that proposition itself "has no bearing on" the case at bench, for it is not the illegality of petitioner's *apprehension* that is here in issue but the illegality of his subsequent *detention*. More relevant is the People's further

[3]The record does include an unsigned document entitled "Work Sheet," containing a purported history of petitioner's past use of narcotics and bearing a Los Angeles County Clerk's file stamp dated July 12, 1962. Such a "Work Sheet" is manifestly insufficient to comply with the above quoted explicit requirements of section 6502.

[4]In their return the People argue this point "assuming without conceding" that the superior court acted in violation of section 6502 in ordering petitioner's prehearing detention in the absence of a physician's affidavit. But no such "concession" is needed for us to consider the effect of the illegality of that detention, since section 6502 is unequivocal in requiring an affidavit in these circumstances.

argument that the application for habeas corpus "contains no allegation that any statements petitioner may have made to the doctors ordered to examine him were involuntary or that any evidence obtained by the doctors through their examination of him was a 'necessary product of the illegal detention'" (citing *Rogers* v. *Superior Court* (1955) 46 Cal.2d 3, 10 [13] [291 P.2d 929]). Viewing the matter in this light, it could conceivably be contended that the case at bench is controlled by the rule that after judgment a defendant may not complain of a denial of his pretrial right to be taken before a magistrate within the time specified by law (Pen. Code, § 825) "unless he shows that through such wrongful conduct he was deprived of a fair trial or otherwise suffered prejudice as a result thereof." (*People* v. *Combes* (1961) 56 Cal.2d 135, 142 [1] [14 Cal.Rptr. 4, 363 P.2d 4], and cases there cited.)

The foregoing rule, however, is inapplicable to the subject proceedings. As we held in *In re De La O* (1963), *supra, ante,* pp. 128, 150 [14], "The commitment procedures set up by the subject statute are in the nature of special civil proceedings unknown to the common law. . . ." Being a creature of statute, jurisdiction to enter an order of commitment pursuant thereto depends on *strict compliance with each of the specific statutory prerequisites for maintenance of the proceeding.* Thus, in directing the release on habeas corpus of a person committed under the statutes relating to habit-forming drug addicts (now, Welf. & Inst. Code, §§ 5400-5408), the court in *In re Crowley* (1928) 95 Cal.App. 219, 221 [1] - 222 [2] [272 P. 787], reasoned that "proceedings such as the one under consideration are purely statutory and are not based upon the common law. . . . This leads to the conclusion that the requirements of the statutes must be at least substantially, *if not strictly,* followed in order to give the court wherein it is proposed to hear the proceedings, jurisdiction thereof. . . . If jurisdiction is not required [acquired?] by reason of the affidavit not complying with section 2168 of the Political Code [now, Welf. & Inst. Code, § 5050, *post,* fn. 5], it appears that the subsequent action of the court in directing the issuance of the commitment does not give vitality to that which was void in the first instance." (Italics added.)

The subject affidavit requirement of Penal Code section 6502 is apparently derived from an earlier provision in the

law relating to the commitment of mentally ill persons.[5] In *In re Hofmann* (1955) 131 Cal.App.2d 758 [281 P.2d 96], a person committed under that law was ordered released on habeas corpus on the ground, among others, of an unlawful detention prior to hearing. The court there reasoned (*id.* at pp. 761-762 [1]) that under section 5050 of the Welfare and Institutions Code (*ante,* fn. 5) "There is no evidence before the court of the existence of facts which would have warranted the immediate hospitalization or detention of Mrs. Hofmann. She had a right to remain in her home pending the examination. Deprivation of this right affected adversely her interests in all the subsequent proceedings.

"The authority of the court in such matters is statutory. [Citations.] *The right of the patient to remain at liberty with an opportunity to consult with relatives and friends, to receive legal advice, and in other ways prepare for the examination and hearing, is one that should be scrupulously observed by the authorities.* . . . There was, in our opinion, not even substantial compliance with the prescribed procedure; we can only conclude that petitioner's present confinement is illegal." (Italics added.)

▮ Likewise, the statutory right (in the absence of the physician's affidavit provided for in Penal Code section 6502) of a person sought to be committed as a narcotics addict to remain at liberty with an opportunity to consult with relatives and friends and to obtain legal advice "is one that should be scrupulously observed by the authorities." (*In re Hofmann* (1955), *supra.*) Indeed, section 6502 is even stricter in this regard than the statute involved in the *Hofmann* case in that it does not allow prehearing detention simply on a finding by the court that "it otherwise affirmatively appears that [the] person is likely to injure himself or others" (Welf. & Inst. Code, § 5050, *ante,* fn. 5); under the specific language of Penal Code section 6502 (quoted *ante,* p. 638) the *minimal allowable ground* for prehearing

---

[5]Section 5050 of the Welfare and Institutions Code provides in relevant part: "If it appears to the judge from a certificate of a licensed physician and surgeon dated not more than three (3) days prior to the presentation of the petition and filed with the court, certifying that he has examined the person and is of the opinion the person is mentally ill, and because of his illness is likely to injure himself or others if not immediately hospitalized or detained, or if it otherwise affirmatively appears that said person is likely to injure himself or others, the judge may issue and deliver to a peace officer or counselor in mental health of the county an order directing that the person be forthwith detained. . . ."

dentention requires the physician's affidavit that was omitted in the case at bench.[6]

## Failure to Give Notice of Hearing.

The record before us further shows that on July 16, 1962, an order was entered pursuant to Penal Code section 6502[7] directing that petitioner submit to a physician's examination on the following day; and that copies of such order and of the petition for commitment were personally served on petitioner on July 16. The physician's examination apparently took place as scheduled, on July 17. Section 6504 of the Penal Code provides that *"The report of the examination by the physician shall be delivered to the court,* and if the report is to the effect that the person is not addicted nor in imminent danger of addiction, it shall order the petition dismissed. If the report is to the effect that the person is addicted or in imminent danger of addiction, *the court shall set a time and place of hearing and cause notice thereof to be served on the person."* (Italics added.) The hearing was held on July 19, but it does not appear from the record how or when or by whom the time and place of hearing were set, or even whether the hearing was ordered in response to the report of the physician's examination.[8]

---

[6]Like a mentally ill person, a narcotics addict is a sick person in need of treatment, not a criminal; yet even a criminal (charged with any offense except one punishable by death) has the right to remain at liberty prior to his conviction by posting bail (Pen. Code, §§ 1271, 1284). It is not asking too much to insist that the right of an alleged narcotics addict to remain at liberty prior to his hearing (in the absence of the physician's affidavit provided for in section 6502) be equally respected.

[7]Section 6502 provides in this connection: "Upon the filing of a proper petition pursuant to Section 6500, the court shall order the person sought to be committed to be examined by a physician or physicians, by order similar in form to the order for examination prescribed by Section 5050.1 of the Welfare and Institutions Code."

[8]The latter report, entitled "Certificate of Medical Examiners," contains the following *printed* recitals: "We, Dr. _____ and Dr. _____, Medical Examiners in the County of Los Angeles, duly appointed and certified as such, do hereby certify under our hands that we have jointly examined _____, an alleged narcotic addict and *have attended* before a judge of said court at the hearing on the affidavit [i.e., petition for commitment] concerning said person, and *have heard* the testimony of all witnesses and, as a result of the examination, *have testified under oath before the court* to the following facts concerning said person . . . ." (Italics added.) The "Certificate" is dated July 19, the date of the hearing; and from the italicized language just quoted it would appear that such a document could not have been filed until the time of the hearing itself. But how then could it have complied with the requirement that *before the hearing is set* "The report of the examination by the physician shall be delivered to the court" (Pen. Code, § 6504)?

Still more importantly, the record is devoid of evidence that notice of the time and place of hearing was ever served on petitioner as required by section 6504 ("the court shall . . . cause notice thereof to be served on the person"). The People point to the fact that a so-called "Notice of Right to Hearing" was appended to the order for examination served on petitioner on July 16. But that "Notice" (see fn. 1, *ante*) is based on a provision of the Welfare and Institutions Code (§ 5050.5) dealing with a wholly unrelated problem, and is irrelevant to any aspect of the subject proceeding: it gives notification not of the commitment hearing but of the physicians' examination, and neither purports to be nor amounts to compliance with the above quoted requirement of Penal Code section 6504. The preparation and service of such a document can only have added to petitioner's confusion as to the nature and extent of his legal rights.[9]

Among the rights undoubtedly provided by the statute before us, and implicitly guaranteed by our Constitution (Cal. Const., art. I, § 13), is petitioner's right to have notice of the time and place of his hearing served on him pursuant to section 6504. That right would appear to be essential to the fairness of the entire proceeding. Under section 6505 petitioner is also given the similarly protected right to have subpoenas issue for the attendance of witnesses, the right to be represented by counsel and to have court-appointed counsel if necessary, and the right to present and cross-examine witnesses. But these latter rights — relating more to the *conduct* of the hearing — may be of little value if petitioner is not first given due notice of the time and place of the hearing and hence an opportunity to retain or request counsel, summon and interview witnesses, and otherwise prepare his case. Nor can it successfully be argued that the commitment hearing is merely preliminary in nature because the statute further provides that "If the person so committed or any friend in his behalf is dissatisfied with the order of the court, he may demand a hearing by judge or jury in sub-

---

[9]That confusion is well illustrated by petitioner's lengthy complaints that he was denied various rights by reason of the deletion of portions of this "Notice of Right to Hearing"—yet the rights there in question actually are relevant only to *mental health* examinations and hearings under Welfare and Institutions Code sections 5050 et seq.

Indeed, the use of inappropriate, inflexible, or outdated printed forms (often "signed" with a rubber stamp) infects this whole record: see especially the Certificate of Medical Examiners (*ante*, fn. 8), the Judgment and Commitment, and the "minutes" of the commitment hearing, all attached to the Return.

stantial compliance with the provisions of Section 5125 of the Welfare and Institutions Code." (Pen. Code, § 6508.) In *Matter of Lambert* (1901) 134 Cal. 626 [66 P. 851, 86 Am. St.Rep. 296, 55 L.R.A. 856], the court struck down as unconstitutional a portion of the Insanity Law of 1897 on the ground, among others, that it authorized commitment of a person to an insane asylum without giving that person "any notice of the proceedings against him"; and it was there observed (*id.*at p. 629) that "The provision in section 4 for a trial upon the question of his insanity is *effective only after the order of commitment has been made,* under which the person may have been immediately placed in the hospital, and cannot be made a substitute for his right to have an opportunity to be heard and to defend himself against the charge *before being deprived of his liberty."* (Italics added.) (See also *In re Wright* (1939) 31 Cal.App.2d 166, 168 [1] [88 P.2d 186].)

In view of the foregoing considerations we do not reach petitioner's further complaint that he was denied the opportunity for adequate consultation with his court-appointed counsel and that the latter accorded him only a *pro forma* defense. Nor do we reach petitioner's final contention, which should have been raised on appeal from the order of commitment (see *In re De La O* (1963), *supra, ante,* pp. 128, 156 [20]), that the evidence adduced at his hearing was insufficient to support that order.

The writ of habeas corpus is granted and petitioner is ordered discharged from custody insofar as it relates to the proceeding in Crim. No. 7255.

Gibson, C.J., Traynor, J., McComb, J., Peters, J., Tobriner, J., and Peek, J., concurred.