54

[Crim. No. 12840. In Bank. Apr. 30, 1969.]

In re ALYCE MAE WALKER on Habeas Corpus.

Philip M. Schwabacher, Norman Herring, Henry J. Shames and Harold Benjamin for Petitioner.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Bradley A. Stoutt, Deputy Attorney General, for Respondent.

MOSK, J.—This is a companion case to *In re Marks, ante,* p. 31 [77 Cal.Rptr. 1, 453 P.2d 441], also decided this day. With one crucial exception, the contentions are the same as those raised in *Marks* and are without merit for the reasons there stated. The exception, a challenge to the validity of the initial commitment for narcotics addiction, is meritorious and requires issuance of the writ of habeas corpus.

The present application was filed on behalf of Alyce Mae Walker (hereinafter called petitioner), currently confined in the California Rehabilitation Center under an order of com-

mitment as a "civil" narcotics addict. (Welf. & Inst. Code, § 3100 et seq.) The circumstances of her commitment are as follows:

In the early morning hours of April 18, 1967, petitioner, ill as a result of ingesting sleeping pills and alcohol, consulted her private physician. After an examination he gave her a handwritten note addressed "To Whom It May Concern" and dated "5/18/67—9 a.m.," stating that she had used heroin and narcotic stimulants "on and off" since 1959 and was currently addicted to barbiturates and amphetamines, and that in his opinion it would be in her best interests if she were "committed for care to a state institution." Petitioner then went directly to the Psychiatric Unit of the Los Angeles County General Hospital and requested such care.

The hospital authorities, however, referred her to the district attorney's office. Thereafter matters proceeded swiftly. In the hours remaining of the same day, (1) the district attorney filed a petition in the superior court seeking to have petitioner committed to the California Rehabilitation Center as a narcotics addict (Welf. & Inst. Code, § 3100); (2) after consultation with a deputy public defender, petitioner signed a sweeping waiver of all her statutory rights; (3) a "hearing" was held at which no witnesses were called and no evidence was taken; and (4) the court nevertheless "found" that petitioner was a narcotics addict and entered the order of commitment now challenged.

The record thus discloses that, contrary to the statutory requirements,[1] the court did not order petitioner to "be examined by a physician or physicians" (Welf. & Inst. Code, § 3102); that a copy of the petition and order for examination were not "personally delivered" to petitioner "At least one day before the time of the [medical] examination" (Welf. & Inst. Code, § 3103); that the court did not "appoint two medical examiners to examine the person alleged to be a narcotic addict," and hence no report of such examination was "delivered to the court" (Welf. & Inst. Code, § 3104); and that the court did not "set a time and place of hearing and cause notice thereof to be served" on petitioner (Welf. & Inst. Code, § 3104).

---

[1] All statutory references in this opinion are to the narcotics addict commitment law as it existed in May 1967. Shortly thereafter most of the relevant sections were amended, but in a manner further strengthening the rights of persons sought to be committed. (See People v. Murphy (1969) 70 Cal.2d 109, 121-122, fn. 12 [74 Cal.Rptr. 65, 448 P.2d 945], and authorities there cited.)

█ It is settled that jurisdiction to enter an order of commitment depends on strict compliance with each of the specific statutory prerequisites for maintenance of the proceeding. (*In re Raner* (1963) 59 Cal.2d 635, 639 [30 Cal.Rptr. 814, 381 P.2d 638] ; *In re Jones* (1964) 61 Cal.2d 325, 327 [38 Cal.Rptr. 509, 392 P.2d 269].) █ There being no such compliance in the case at bar, the commitment was invalid unless it was saved by petitioner's purported waiver.

At the time here relevant, Welfare and Institutions Code section 3107 provided that ''Hearing may be waived by consent of the person sought to be committed, expressed in open court or in writing by the person prior to hearing.'' Construing the similarly worded predecessor to this statute (former Pen. Code, § 6507 ; Stats. 1961, ch. 850, p. 2227), we commended the practice of waiver as one ''which, while fully protecting the rights of the individual, permits the start of treatment and rehabilitation to be expedited in uncontested commitment cases and thus 'conserves the time and effort of the parties and the judiciary' [Citation].'' (*In re Cruz* (1965) 62 Cal.2d 307, 313 [42 Cal.Rptr. 220, 398 P.2d 412].) We adhere to that view; but we reiterate that in order to be effective such a waiver must be, as it was in *Cruz,* both ''informed and limited.'' (*Ibid.*)

█ The first requirement of any waiver of statutory or constitutional rights, of course, is that it be knowingly and intelligently made. Such a showing is difficult enough in an ordinary criminal case, as witness the many appellate decisions on the point; it is even more difficult when the person purporting to make the waiver is in an altered physiological or psychological state, the characteristic of all narcotics addicts (see *People* v. *Victor* (1965) 62 Cal.2d 280, 301-305 [42 Cal.Rptr. 199, 398 P.2d 391]). █ A waiver pursuant to Welfare and Institutions Code section 3107, therefore, must be carefully scrutinized to determine that the person making it had the physical and emotional capacity to do so under all the circumstances of the case.

Here the waiver by petitioner includes a statement that she had ''an opportunity to discuss . . . the advisability and ramifications of my waiving my rights . . . with legal counsel''; and that she ''freely and voluntarily'' waived these rights, ''which I fully understand and comprehend.'' This is followed by a similar statement on the part of her attorney, joining in the waiver. Other considerations, however, weigh

against the sufficiency of the foregoing recitals. The entire waiver instrument is a printed form, and petitioner's sole participation in its preparation was to "sign on the dotted line."[2] In a declaration made under penalty of perjury, petitioner now avers that while the signature on the waiver form is hers, "that is all I recall about the instrument"; and that at the time of the hearing "I thought I was going to the Los Angeles County General Hospital, Psychiatric Unit, for some sort of treatment or therapy." A written waiver executed by a person represented by counsel will not lightly be set aside on the basis of such self-serving, post facto explanations; but in the present case petitioner's complaint that the proceedings were all over "before I realized what was happening to me" is lent credibility by her headlong rush from illness to doctor's examining room to county hospital to district attorney's office to courtroom to commitment, all in the span of a single working day.

We need not, however, resolve the question whether the waiver in this case was knowingly and intelligently made, for in any event it is too broad. It purports to dispense with the fundamental requirement of a medical examination of petitioner to verify the fact of her addiction. But section 3107 provides only that "Hearing may be waived" by appropriate consent, not that the various statutory safeguards *preceding* a hearing may also be waived. In particular, the authority to waive the actual presence and testimony of physicians at a hearing does not necessarily imply an authority to waive the prior examination and report by such physicians. That examination serves an independent and vital purpose, as we explicitly recognized in *Cruz*.

In that case, as here, the petitioner had signed a waiver form purporting to dispense with every right granted by the narcotics addict commitment law.[3] We reasoned (at p. 310 of 62 Cal.2d) that "We need not now determine whether so sweeping a waiver of *all* the statutory safeguards surrounding these special proceedings would, or in all circumstances

---

[2] Her attorney did no more, failing even to strike out the inappropriate words in his recital that "I am satisfied that he/she fully understands the nature of these proceedings and the ramifications of waiving his/her rights. . . ."

[3] We are dismayed that such blanket waiver forms were still in use at the time of these proceedings, more than two years after *Cruz*. We have repeatedly pointed out the dangers of using inappropriate forms in commitment cases. (*People* v. *Victor* (1965) *supra*, 62 Cal.2d 280, 293, fn. 8; *In re Raner* (1963) *supra*, 59 Cal.2d 635, 641, fn. 8, 642, fn. 9.)

should, be valid," because the trial court had nevertheless appointed two physicians who had both examined the petitioner and had testified to their findings of addiction and filed the necessary report. In a footnote to our quoted language, however, we admonished that "the protection of both the individual and society would seem to be served by, *if not to require,* a medical examination in any event to verify the person's addicted condition. (Compare Welf. & Inst. Code, § 5050.8, which provides that even where there has been a waiver of hearing in mental illness proceedings, the judge 'shall consider the report of the two medical examiners appointed by the court to make a personal examination of the person and to report to the court.')" (Italics added.)

Any doubt that our use of the word "require" might have been unintentional should have been dispelled by our conclusion on this point a few pages later (*id.* at pp. 312-313) : on the record of the case, we explained, "*the necessary elements of a valid waiver* are present: i.e., (1) petitioner was first fully informed by the court of the nature and purpose of the commitment proceeding and of his rights therein; (2) an attorney was appointed to represent petitioner in this proceeding, and petitioner was given an opportunity to obtain his advice in regard to the proposed waiver; (3) *a medical examination was conducted by court-appointed physicians to verify petitioner's addicted condition*; and (4) thereafter the judge in open court questioned petitioner individually as to his desire to begin treatment as soon as possible, received from him the waiver set forth hereinabove, and *took in evidence the testimony and report of the examining physicians.*" (Fn. omitted; italics added.)

An examination by court-appointed physicians in waiver cases thus serves to protect the volunteer from a commitment entered into as a result of mistake, duress, depression or fear; indeed, it also protects the state, by assuring that all persons committed to its overburdened rehabilitation facilities are genuinely in need of the services there provided.[4]

[4]The official supervisory agency of the rehabilitation program recently reported that "For the first time in the history of the California Rehabilitation Center a maximum population of 2,030 men and 330 women has been reached. Because of this it has been necessary to designate additional branch facilities at the California Correctional Institution as well as the previously established branches at the California Men's Colony and California Medical Facility. Persons receiving treatment at these branch facilities are selected on the basis of specialized programs and facilities available at those institutions. It does not appear that population problems will lessen in the coming year." (4 Cal. Narcotics Rehabilitation Advisory Council Ann. Rep. (1968) p. 2.)

 In the case at bar the record is devoid of evidence establishing each of the ''elements of a valid waiver'' emphasized in *Cruz*.[5] The commitment, accordingly, must be set aside; and as petitioner is not otherwise held under a conviction of crime, she must be restored to her liberty.

The writ of habeas corpus is granted and petitioner is ordered discharged from custody.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

---

[5] The trial court did not attempt to construe the handwritten note from petitioner's own doctor as the ''report'' of court-appointed physicians required by statute. The printed ''Certificate of Medical Examiner'' appended to the waiver form was left blank and unsigned; and on the face of the order of commitment the court struck out the customary recital that such a certificate had been prepared, signed, and filed as a part of the proceedings.