[Crim. No. 12370. In Bank. Jan. 14, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. MICHAEL MURPHY, Defendant and Appellant.

---

Jane Gurley for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci

and Karl S. Mayer, Deputy Attorneys General, for Plaintiff and Respondent.

MOSK, J.—Defendant appeals from an order finding him to be a person "in imminent danger of becoming addicted to narcotics" and committing him to the custody of the Director of Corrections for placement in the narcotics addict rehabilitation program. (Welf. & Inst. Code, § 3051.)

We are once again called upon to resolve difficult questions concerning the manner and scope of review of narcotics addiction commitment proceedings. The statutory scheme (Welf. & Inst. Code, §§ 3000-3305) provides little guidance in this respect, and in a series of decisions we have therefore undertaken to delineate the appropriate remedies. (See, e.g., *In re De La O* (1963) 59 Cal.2d 128, 153-156 [28 Cal.Rptr. 489, 378 P.2d 793, 98 A.L.R.2d 705]; *People* v. *Victor* (1965) 62 Cal.2d 280, 287-289 [42 Cal.Rptr. 199, 398 P.2d 391]; *People* v. *Bruce* (1966) 64 Cal.2d 55, 59-62 [48 Cal.Rptr. 719, 409 P.2d 943]; cf. *People* v. *Gonzales* (1968) 68 Cal.2d 467, 469-471 [67 Cal.Rptr. 551, 439 P.2d 655].) After further elucidation of various aspects of this problem in the case at bar, we turn to the cognizable claims raised by defendant and find them to be without merit. Accordingly, the order of commitment must be affirmed.

On November 30, 1966, defendant pleaded guilty to one count of possession of marijuana, a felony. (Health & Saf. Code, § 11530.) His then counsel, Mr. Friedman, advised the court that he had reason to believe defendant was eligible for the narcotics addict rehabilitation program, and requested that the criminal proceedings be adjourned and proceedings for civil commitment be initiated under Welfare and Institutions Code section 3051. The court acceded to the request, and the following day the district attorney filed a petition for commitment.[1]

After several continuances, the petition came on for hearing on January 3, 1967. Defendant's new counsel, Mr. Berg, was apparently determined to resist his client's commitment. He moved to withdraw the plea of guilty to the criminal charge, for an immediate jury trial on the issue of addiction, and to

---

[1]A copy of the petition was served on defendant and he was arraigned thereon. The clerk's transcript recites that he "was asked if it was his desire that he be committed in accordance with the petition and he personally answered yes." Drs. Hagan and Wark were appointed to examine defendant, and a copy of the order fixing the time and place of hearing was also served on him.

disqualify the judge by peremptory challenge. The motions were denied. After hearing expert and lay witnesses presented by the district attorney and cross-examined by defense counsel, the court on January 13, 1967, found defendant to be in imminent danger of addiction and ordered him committed to the rehabilitation program.

On the same day, January 13, defendant through his counsel filed a notice of appeal from the order of commitment. On January 20, however, defendant through his counsel also filed a demand for a trial de novo on the issue of addiction.[2]

### I

■■ ■ At the outset, we put aside two contentions of defendant which challenge his conviction of possession of marijuana and hence may not be litigated on this appeal.

Under the law as it stood when this case was tried, a person who had been convicted of a crime in a municipal or superior court and was then committed to the narcotics addict rehabilitation program (Welf. & Inst. Code, §§ 3050, 3051) had two alternative routes open to him for raising claims of error occurring in the *criminal* trial. First, he could move for a new trial and, by special statutory provision, appeal directly from a denial of that motion. (Former Pen. Code, § 1237, subd. 2; see, e.g., *People* v. *Meison* (1968) 261 Cal.App.2d 322 [67 Cal.Rptr. 750].) Secondly, upon termination of the commitment he could take his normal appeal from any criminal judgment then entered (former Pen. Code, § 1237, subd. 1), and any pending appeal from the denial of a motion for new trial would be dismissed. (Former Pen. Code, § 1237, subd. 2; see, e.g., *People* v. *Bourland* (1966) 247 Cal.App.2d 76, 80 [55 Cal.Rptr. 357].)

But what he could not do—as defendant has here attempted —was to use his right to appeal from the order of *civil* commitment as yet another vehicle to attack his criminal conviction. (*People* v. *Cordova* (1967) 253 Cal.App.2d 434 [61 Cal.Rptr. 327]; *People* v. *Le Gerrette* (1966) 245 Cal.App.2d 764 [54 Cal.Rptr. 304].) Both in form and in substance, the civil commitment proceedings are wholly distinct from the

---

[2]At the relevant time, Welfare and Institutions Code section 3051 provided in part that ''If a person committed pursuant to this section, after conviction of a felony, is dissatisfied with the order of the court, he may demand a hearing by a judge or jury in substantial compliance with the provisions of Section 5125 [*sic*; the correct reference should have been to § 5572] of this code.'' All the statutes involved in this case have since been amended (see fn. 12, *post*), but a jury trial de novo on the issue of addiction may still be demanded by the person committed.

criminal prosecution. The commitment order is appealable only because it is deemed to be a final judgment in a "special proceeding" (Code Civ. Proc., § 963, subd. 1; *In re De La O* (1963) *supra,* 59 Cal.2d 128, 156), and the contours of that proceeding delimit the scope of its review: "in such appeal he may base error only on the lack of jurisdiction of the trial court to institute commitment proceedings or the invalidity of the proceedings[3] culminating in the order itself." (*People* v. *Le Gerrette* (1966) *supra,* 245 Cal.App.2d 764, 765.)

 At the time here relevant, moreover, such an attempted review of the judgment of conviction would necessarily have been premature: until the defendant was returned to court and sentenced after his rejection or release from the rehabilitation program (Welf. & Inst. Code, §§ 3053, 3200), the criminal charge had not been prosecuted to a "final judgment of conviction" within the meaning of the basic criminal appeal statute (former Pen. Code, § 1237, subd. 1).[4]

 Before leaving this point, however, we pause to explain the relevance of our recent decision in *People* v. *Moore* (1968) 69 Cal.2d 674 [72 Cal.Rptr. 800, 446 P.2d 800], to the rules on scope of review which we here reaffirm.

---

[3] As will appear (Part III, *post*), that invalidity may be predicated either on errors of law or on insufficiency of the evidence.

[4] In *People* v. *Gonzales* (1968) 68 Cal.2d 467, 471 [67 Cal.Rptr. 551, 439 P.2d 655], we pointed out that this procedure often caused lengthy delays in reviewing the criminal judgment. In response, the Legislature has now amended Penal Code section 1237 to provide in relevant part that "An appeal may be taken by the defendant: 1. From a final judgment of conviction. . . . The commitment of a defendant for narcotics addiction shall be deemed to be a final judgment within the meaning of this section 90 days after such commitment." (Stats. 1968, ch. 315, § 2; § 3 effected a similar change in Penal Code section 1466, the basic appeal statute in misdemeanor cases; see also Cal. Rules of Court, rules 31(a) and 182, as amended eff. Nov. 13, 1968.)

Although the 1968 revision comes too late to apply to the case at bar, the result would in any event have been the same under its terms. From the phrase, "within the meaning of this section," we infer that the amendment was meant to cure only the evil to which it was directed, i.e., the delayed appealability of the *criminal* judgment in this type of case: under the new statute, such an appeal may now be noticed as soon as 90 days after the making of the order of commitment. But the statute was not intended to affect existing case law on the manner and scope of appeal from the commitment order itself. That appeal remains governed by Code of Civil Procedure section 963; it must therefore be noticed within the time provided for ordinary appeals in civil matters (Cal. Rules of Court, rule 2(a)), regardless of whether the defendant also intends to appeal from his criminal judgment at the proper time. Just as under the prior law, the manifest distinctions between the two proceedings may not be evaded by the device of grafting conviction-related issues onto an appeal from the order of commitment.

We held in *Moore* that a person sought to be committed under this statutory scheme enjoys the freedom from unreasonable search and seizure guaranteed by the Fourth Amendment and implemented by the exclusionary rule. It follows that a claim on appeal from an order of commitment that certain evidence was obtained by an illegal search and seizure cannot be dismissed if that evidence was introduced over timely objection at any stage of the commitment proceedings. On the other hand, if the evidence in question was introduced solely at the criminal trial, as in the case at bar,[5] the claim is not cognizable on such appeal.

## II

The trial court correctly took no action on defendant's demand, made on January 20, 1967, for a jury trial de novo on the issue of addiction. One week earlier, on Janaury 13, defendant had filed his notice of appeal from the order of commitment; the "subject matter" of that appeal, on its face, was the entire order of the court.[6] It is code law that the taking of an appeal "stays all further proceedings in the court below upon the judgment or order appealed from, or upon the matters embraced therein" (Code Civ. Proc., § 946). This rule governs in both civil (*Sacks* v. *Superior Court* (1948) 31 Cal.2d 537, 540 [190 P.2d 602], and cases cited) and criminal causes (see *Anderson* v. *Superior Court* (1967) 66 Cal.2d 863, 865 [59 Cal.Rptr. 426, 428 P.2d 290], and cases cited); we now consider whether it also applies to the special proceedings here in issue.

It is true that the right to demand a trial de novo on the issue of addiction is specifically declared by statute (see fn. 2, *ante*); but we do not believe the Legislature intended thereby to require or even permit a defendant to attack the sufficiency of the evidence in a retrial and *simultaneously* to prosecute an appeal from the order of commitment. Among the practical difficulties of such a bifurcated remedy, at least one is immediately apparent: if the "subject matter" of the defendant's appeal were limited by the issues he chose to present, the trial court would be compelled to wait for the several months ordi-

---

[5]The evidence that defendant now seeks to challenge is a quantity of marijuana found on his premises; it was not introduced at the commitment hearing, and the order appealed from was predicated exclusively on the testimony of the court-appointed doctors as to the results of their independent examinations of defendant conducted after the filing of the petition for commitment. This sequence is by far the most common in commitment proceedings arising after a criminal prosecution.

[6]The notice simply recited in general terms that defendant appealed "from the commitment" entered on January 13, 1967.

narily consumed in the preparation of appellate briefs before it could learn whether or not it had jurisdiction to proceed with the trial de novo. A delay of those proportions, however, is impermissible. (See fn. 7, *post.*)

Nor is there any need for such a radical departure from the normal sequence of judicial review. A person who has been committed may deem himself aggrieved, for example, in two respects: i.e., that there has not been ''strict compliance with each of the statutory prerequisites for maintenance of the proceeding'' (*In re Raner* (1963) 59 Cal.2d 635, 639 [30 Cal.Rptr. 814, 381 P.2d 638]; italics omitted), and that the evidence at the hearing was insufficient to support the finding of addiction. ▉ If he opts for the statutory alternative of relitigating the latter issue in a trial de novo, he cannot raise the issue again on an appeal from the outcome of that trial; on such appeal he can, of course, challenge the sufficiency of the evidence introduced at the trial de novo, but he will be deemed to have waived any further complaint he may have as to the sufficiency of the evidence at the original hearing. ▉ On the other hand, by so opting he cannot be deemed to have waived his claim of noncompliance with the statutory procedural requisites: he simply had no opportunity to litigate that claim in the trial de novo, and the exercise of his statutory right to such a trial cannot be made conditional on relinquishing his judicially declared right to challenge fundamental deficiencies in the commitment process. (See, e.g., *In re Raner, supra; In re Trummer* (1964) 60 Cal.2d 658.[36 Cal.Rptr. 281, 388 P.2d 177]; *In re Jones* (1964) 61 Cal.2d 325 [38 Cal.Rptr. 509, 392 P.2d 269].) As we said in a related context, ''To hold otherwise would create a trap foreclosing an appeal on the merits.'' (*People* v. *Gonzales* (1968) *supra,* 68 Cal.2d 467, 471.)

The distinction is well illustrated by *People* v. *Whelchel* (1967) 255 Cal.App.2d 455 [63 Cal.Rptr. 258]. There the defendants were committed as persons in imminent danger of addiction after a hearing at which only one doctor testified, in violation of the statutory mandate then in force requiring that ''at least two'' doctors shall ''testify before the judge as to the result of the examination'' (Welf. & Inst. Code, §.5564). The defendants did not immediately appeal, but demanded and received a trial de novo; the jury found them to be in imminent danger of addiction, and an appeal was taken at that time. The Court of Appeal correctly limited the scope of review on the twice-litigated issue of fact: ''The

insufficiency of the evidence at an initial hearing to support the order of commitment may not be asserted on appeal where the evidence at the jury trial is sufficient to support the commitment." (*Id.* at p. 462.) But the court nevertheless entertained the defendants' claim of noncompliance with the statutory requirement that both doctors testify at the initial hearing, and on that ground reversed the orders of commitment. (*Id.* at pp. 458-459; accord, *In re Gonzales* (1966) 246 Cal. App.2d 296, 297-298 [54 Cal.Rptr. 689]; but see *People* v. *Garcia* (1967) 256 Cal.App.2d 570, 571 fn. 1, 574-575 [64 Cal.Rptr. 370].)

We recognize that if the person committed thus awaits the outcome of the trial de novo before appealing on the ground of noncompliance with the procedural prerequisites of the commitment hearing, there will be some delay in presenting that issue for adjudication. But when measured against the average time required to process and decide an appeal on the merits, the delay will be negligible.[7] Here, too, practical considerations play their role: for example, if in the trial de novo the defendant should be found not to be addicted or in imminent danger thereof, an unnecessary appeal will have been avoided with a concomitant saving of the time and effort of the parties and the courts.

We conclude that there is no impediment to invoking, in these proceedings, the general rule that the taking of an appeal removes the challenged judgment or order from the jurisdiction of the trial court. For this reason, defendant's belated demand for a trial de novo was properly deemed a nullity.[8]

### III

The next question relating to scope of review is the converse of that just discussed: if, as here, the defendant fails for any reason to relitigate the sufficiency of the evidence of addiction by means of a trial de novo, will a waiver of that

---

[7]The demand for a trial de novo must be made within 10 days after the order of commitment (Welf. & Inst. Code, §§ 3050, 3051); the trial must be held within 30 days from the date of the demand (Welf. & Inst. Code, § 3108); and any unreasonable tardiness in bringing the matter to trial may be remedied by writ of mandate (see *People* v. *Donel* (1967) 255 Cal.App.2d 394, 400 [63 Cal.Rptr. 168]).

[8]There is no merit in defendant's contention that his trial counsel's decision to appeal directly from the commitment order could not operate to "deprive" him of his right to a jury trial de novo because he did not "personally waive" such a trial. "The commitment procedures set up by the subject statute are in the nature of special civil proceedings unknown to the common law, and hence there is no right to jury trial unless it is given by the statute." (*In re De La O* (1963) *supra*, 59

issue be inferred so as to bar him from raising it on a direct appeal from the order of commitment?

To begin with, the statute expressly provides that if a person committed is dissatisfied with the order of the court he "may"—not "shall"—demand a trial de novo. (Welf. & Inst. Code, §§ 3050, 3051, 3108.) Elsewhere throughout the narcotics addict commitment law the Legislature has carefully distinguished between such terms,[9] and we cannot assume that its use of the permissive form in this context was a mistake. As we said in *In re Trummer* (1964) *supra,* 60 Cal.2d 658, 665, "a jury trial is not a mandatory step in [commitment] proceedings, but must be requested."

The statute admittedly does not specify what the defendant "may" do in the alternative if he chooses not to demand a trial de novo, yet remains "dissatisfied." It was to fill this gap that in *In re De La O* (1963) *supra,* 59 Cal.2d 128, 156, we declared the commitment order to be directly appealable. But nothing in either the letter or the spirit of that decision limits the scope of such an appeal to questions of law alone. On the contrary, in *In re Raner* (1963) *supra,* 59 Cal.2d 635, 643, the defendant did not exercise his right to demand a jury trial de novo after being committed as a "civil" addict (Welf. & Inst. Code, § 3108), yet we observed that his claim of insufficiency of the evidence adduced at the hearing "should have been raised on appeal from the order of commitment," citing *De La O.*

We recognize that in *People* v. *Bruce* (1966) *supra,* 64 Cal.2d 55, language was used (at p. 61) which appeared to imply that the sufficiency of the evidence of addiction will not be reviewed on appeal unless the defendant has relitigated that issue in a trial de novo. Policy arguments, it must be conceded, can be made both for and against such a rule. First, as pointed out in *Bruce* (*id.* at p. 59), "In the vast majority of cases dealing with mentally ill persons, as well as with narcotic addicts, such petitions are unopposed, and the proceedings tend to be summary in nature." To require the state to undertake a full-dress presentation of the evidence of addiction in uncontested cases would be a waste of public

Cal.2d 128, 150.) In contrast to the constitutional guarantee of a jury trial to all defendants charged with crime, the present statutory scheme places on the person committed the responsibility of making a timely demand for a jury trial de novo if he desires one. Such a demand was not effectively made in this case.

[9]Indeed, section 15 of the Welfare and Institutions Code declares that as used therein, " 'Shall' is mandatory and 'may' is permissive."

resources and precious court time. Yet if the petition is truly unopposed even a summary proceeding could be viewed as wasteful, and the preferable course would appear to be a waiver of the hearing itself. (Welf. & Inst. Code, § 3107; *In re Cruz* (1965) 62 Cal.2d 307, 310-313 [42 Cal.Rptr. 220, 398 P.2d 412].) Secondly, a person who intends to resist commitment should not be allowed to withhold his defense on the issue of addiction, lull the state into believing that an abbreviated offering of evidence will suffice, and then obtain a reversal of the commitment on the ground of the inadequacy of that evidence.

On the other hand, "the burden of establishing addiction is on the state rather than the individual, and the state should be encouraged to discharge that burden fully at the basic proceeding envisaged by the statute, which is the commitment hearing. The rule implied in *Bruce* will give the state an incentive to make only a minimum showing at that hearing, knowing that it cannot be challenged on appeal without a second opportunity to introduce evidence at a trial de novo. And as such trials are not often demanded in practice, the risk of substantial numbers of persons being found addicted on inadequate evidence will increase accordingly." (Belton, *Civil Commitment of Narcotics Addicts in California* (1968) 19 Hast.L.J. 602, 665.)

We need not resolve these conflicting considerations. The language in question has been criticized (Belton, *op.cit. supra,* at pp. 662-664), and was not essential to the decision in *Bruce*.[10] We adhere, however, to the teaching of *Bruce* (at p. 62 of 64 Cal.2d) that *"Normally . . .* a defendant who feels that he has been improperly committed for lack of evidence of his addiction should seek the remedy provided for in the statute, namely, to demand a trial de novo by jury or by court." (Italics added.) In so doing, the factual issue of addiction will be litigated at the trial level, which is the most appropriate forum; and should further review be called for, the appellate court will have the benefit of a more complete record than ordinarily is made at a summary commitment hearing. In short, a defendant need not be foreclosed from raising this issue on a direct appeal from the commitment order, but a trial de novo remains his "normal" and, for the reasons stated, his preferable remedy.

---

[10]Although Bruce did not demand a trial de novo, and we therefore deemed it waived, we nevertheless proceeded to review the evidence of addiction and held it insufficient as a matter of law.

## IV

We turn, finally, to the merits of the issues that are properly before us.

On the first day of the commitment hearing, January 3, 1967, both court-appointed doctors gave their testimony, and defendant's father testified on direct examination and began to testify on cross. He concluded that testimony on January 5, and on January 10 and 12 additional testimony was taken from an attorney acting as a friend of the court. It appears that the doctors were not present in the courtroom on the latter three hearing days. Defendant contends that their absence was in violation of Welfare and Institutions Code section 5564, which declares in part that ''The judge shall compel the attendance of at least two medical examiners, who shall hear the testimony of all witnesses,'' and hence in violation of the *Raner* requirement of strict compliance with each of the statutory prerequisites of the commitment hearing.

The point is not well taken. At the time here relevant, section 3051 commanded only that the commitment proceedings shall be conducted ''in substantial compliance'' with, inter alia, section 5564.[11] We observed in *Bruce* (64 Cal.2d at p. 61) that the purpose of requiring the doctors to hear the testimony of the witnesses was ''to assist them in arriving at their diagnoses.'' Here the brief cross-examination of defendant's father on January 5 was directed primarily to the extent of his relationship with his son; it was in no way inconsistent with the witness' testimony on January 3, and could have had little or no bearing on the doctors' diagnoses. Likewise the testimony of the attorney witness, describing the treatment provided in the rehabilitation program, was irrelevant to the question of whether or not defendant was addicted. In these circumstances, the presence and testimony of the doctors on at least the first day of the hearing constituted ''substantial compliance'' with section 5564, and hence ''strict compliance'' with section 3051.[12]

In attacking the sufficiency of the evidence to support the finding of imminent danger of addiction, defendant

[11]The actual cross-reference was to former section 5053; but as we noted in *Bruce* (64 Cal.2d at p. 58 fn. 3), after the 1965 session that cross-reference must be deemed a legislative oversight as section 5053 was repealed at that time and reenacted as section 5564. (Stats. 1965, ch. 391, § 5.)

[12]This ponderous mechanism of ''substantial compliance'' with largely inappropriate sections of the mental health laws was criticized by us in *People* v. *Victor* (1965) *supra*, 62 Cal.2d 280, 289-293, and subsequently

complains that the doctors' examinations of his condition were brief and that they observed no needle scars, withdrawal symptoms, or other physical evidence of addiction. The extent of such an examination, however, is relevant only to the weight to be given the doctor's testimony. ■ Nor is physical evidence of addiction essential to the determination here made, "if other evidence is sufficient to show repeated use of heroin [or other addictive drug] to the extent that the person has failed to solve his problems by socially accepted methods and that he is emotionally or physically dependent upon narcotics and is, therefore, in the opinion of qualified examiners either addicted thereto or in imminent danger of becoming so addicted." (*People* v. *Bruce* (1966) *supra,* 64 Cal.2d 55, 64-65; see also *People* v. *Garcia* (1967) *supra,* 256 Cal.App.2d 570, 575-576.)

■ The record contains such evidence. Each doctor testified that in the course of his interview with defendant he admitted having used various dangerous drugs and such "hard" narcotics as cocaine, heroin, and opium. On the basis of these admissions and their appraisal of defendant's lack of insight into his problems, the doctors testified that he had a compulsive need to use such drugs and an increased tolerance of their effects, that he would revert to narcotic consumption if "turned loose on the streets," and that he would benefit by commitment to the rehabilitation program. No objection was effectively voiced to the introduction of defendant's admissions.

The foregoing testimony, although not overwhelming, is sufficient on appeal to support the finding that "by reason of repeated use of narcotics [defendant] is in imminent danger of becoming addicted to narcotics" (Welf. & Inst. Code, § 3051), as that phrase is defined in *People* v. *Victor* (1965) *supra,* 62 Cal.2d 280, 304-305.

The order is affirmed.

Traynor, C. J., McComb, J., Peters, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

---

abandoned by the Legislature in favor of a procedure designed specifically for narcotics addiction commitments (Stats. 1967, ch. 1124; see generally Belton, *Civil Commitment of Narcotics Addicts in California* (1968) 19 Hast.L.J. 602, 623-629).