[Crim. No. 16673. Second Dist., Div. Five. Dec. 24, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
THOMAS WINFREY, Defendant and Appellant.

820

[redacted]

**COUNSEL**

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Mary Anne Sykulski, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**REPPY, J.**—On November 25, 1968, following an apprehension by the police and admission to the Los Angeles County central jail infirmary for the making of a physical examination with respect to narcotics addiction, a petition for commitment (pursuant to § 3100.6, Welf. and Inst. Code)[1] was filed by the District Attorney of Los Angeles County. After two continuances the matter was set to be heard on January 14, 1969. Appellant, Thomas Winfrey (hereinafter, Winfrey), had private counsel. By a writing signed by respective counsel and Winfrey it was stipulated that a court commissioner, as temporary judge was appointed to conduct the hearing. Considerable evidence was received at the hearing relating to the legality of the apprehension of Winfrey by the police. Also, the apprehending officers testified concerning the issue of addiction. There was no objection on the part of Winfrey on the basis that any part of the observation of Winfrey was the fruit of an illegal apprehension. In addition, respective counsel stipulated that the affidavit of examination and further examination executed by Dr. Wetzel on November 22, 1968, would be received and read into evidence, and it was.[2] This also was done without an objection being made that the doctor's examination came about as the result of the fruit of an illegal apprehension. The substance of the report stated the doctor's belief that Winfrey was addicted to the use of narcotics and gave the basis of that belief.

The matter was submitted. Before the temporary judge made his order, Winfrey's counsel advised the court that he was requesting a jury trial. The temporary judge then stated: "The Court finds . . . there is .probable cause for taking [Winfrey] into custody, and that [he] is a narcotic drug addict within the meaning of Section 3100.6 . . . and [the court] commits him to the Director of Corrections at the California Rehabilitation Center . . . [;] [and] the Sheriff . . . shall deliver [him] to the Director of Corrections at the California Rehabilitation Center . . . for the execution of this order. . . . ¶ This order is stayed pending jury trial set for February 10, 1969, at 9:00 A.M., Department 95. . . ."

Also a written commitment form was completed and filed which recited

---

[1]All code section references hereafter are to the Welfare and Institutions Code unless otherwise indicated.

[2]One Clarence Winfrey, the brother of Thomas, was apprehended at the same time and was concurrently under commitment proceedings. His examining physician was Dr. Lavelle. It was stipulated as to Dr. Lavelle that he was licensed to practice medicine and an expert in the field of narcotics. This oral stipulation was omitted as to Dr. Wetzel. However, no objection has been made as to this omission and in his report Dr. Wetzel identifies himself as licensed to practice medicine, and the nature of the report indicates his expertise in the narcotics field.

that the proceedings had taken place and that Winfrey had requested a jury trial being set for February 10, 1969, which found that Winfrey was a narcotic drug addict, which decreed that he was so addicted, and which directed the sheriff to convey him to the Director of Corrections at the California Rehabilitation Center.

It is clear from the record that the failure of Winfrey's counsel to object to the admission of evidence on the issue of addiction was not because the legality-of-apprehension point was overlooked or because it was felt that a challenge would lack merit, but because he, along with the deputy district attorney, had the misconception that the point could be raised in a Penal Code section 1538.5 proceeding preliminary to a jury trial, which section 1538.5 proceeding, in turn, if desired, could be reviewed by the Court of Appeal prior to the commencement of the jury trial.[3] ■ The provisions of Penal Code section 1538.5 apply solely to criminal proceedings, They do not apply to, and there is no comparable statute applicable to civil narcotic addiction proceedings. (*People* v. *Bourdon*, 10 Cal.App. 3d 878, 882 [89 Cal.Rptr. 415].)[4]

Even though there was no objection to the addiction evidence on the basis of an allegedly illegal apprehension, the temporary judge passed on the point of the legality of the apprehension, finding, as above noted, that there was probable cause for taking Winfrey into custody.

At no time did Winfrey, on his own or through counsel, execute or file a *written* demand that the question of his addiction be tried by a jury in the superior court. This is called for in section 3108. However, the district attorney made no objection when the jury trial was orally requested

---

[3]Although at one point the People argued that a Penal Code section 1538.5 motion was limited to new evidence not presented at the section 3106 commitment hearing, they did not renew this objection before the judge who heard the motion to suppress the evidence. At no time did the People urge that Penal Code section 1538.5 was inapplicable to civil narcotic addiction commitment proceedings.

When the matter was in department 95 for assignment to another department for jury trial, Winfrey's counsel advised the court that he wished to have a Penal Code section 1538.5 motion set. The deputy district attorney indicated it was his contention that the motion did not lie unless there was evidence not brought out in the course of the section 3106 hearing which he deemed a "preliminary trial." Counsel for Winfrey had a similar viewpoint as to the nature of the section 3106 hearing. "I guess the other thing might be called a preliminary hearing; I don't know."

[4]The subject of a commitment proceeding can challenge the admissibility of evidence on constitutional grounds at any stage of the trial proceedings, thus making it appropriate for a motion to suppress to be made at the outset of a demanded jury trial following a commitment after a section 3106 hearing. (See *People* v. *Murphy*, 70 Cal.2d 109, 116 [74 Cal.Rptr. 65, 448 P.2d 945].) The proceedings are civil in nature. (*People* v. *Moore*, 69 Cal.2d 674, 681 [72 Cal.Rptr. 800, 446 P.2d 800].) The motion to suppress, of course, could have been reviewed if Winfrey had gone on with the jury trial and lost it.

or when the matter was called before department 95 of the superior court for transfer for jury trial, or when the suppression took place in department 53 to which the matter was transferred for jury trial, apparently because the district attorney, as well as Winfrey, was desirous of having the legality-of-apprehension issue passed upon by a regular superior court judge. Because of what we consider to be Winfrey's later abandonment of the jury trial, we do not have to pass upon the effect of this deficiency. If the jury trial had proceeded and this had been the only mistake, we might have been constrained to excuse it because of the nature of the district attorney's acquiescence; but we warn that this error well could be fatal, especially after the rendition of this decision.

As above indicated, after several continuances, Winfrey's matter came up on March 4, 1969, for jury trial before a judge of the superior court in department 53.

Although the trial court was at first dubious as to whether Penal Code section 1538.5 was applicable to the civil narcotics proceedings, apparently it became satisfied through counsel that it was; and it proceeded to consider the matter pursuant to a stipulation of respective counsel that if the officers were sworn and qualified as experts, their testimony would be as revealed in the reporter's transcript for the section 3106 proceeding.

The trial court, after considering the evidence taken at the 3106 proceeding, decided the issue of the legality of the apprehension of Winfrey against him, and then asked, "[S]hall we call the jury or what are we going to do?" Winfrey's counsel responded by saying, "[W]e tender no issue on the matter of the addiction." Then the following colloquy took place:

"THE COURT: You waive jury then?

"MR. GORDON: [Winfrey's attorney]: Yes, your Honor.

"THE COURT: I will have to say that the previous order is in effect. Is that right?

"MR. GORDON: Yes, your Honor.

"THE COURT: All right. The defendant Thomas Winfrey in case No. NDA 9740 now waives his trial by jury.

"MR. GORDON: Yes, your Honor."

The trial court then declared that the stay of execution of the previous order of the temporary judge was terminated, and it reiterated the language of that order committing Winfrey to the California Rehabilitation Center and directing the sheriff to deliver him there. Winfrey's counsel

asked for a further stay in the matter so that he could work with Winfrey to prepare certain papers (apparently those related to this appeal). A further stay was ordered until March 11, 1969. It is not clear what the parties considered was the effect of this move; perhaps to them it resulted in a new and superseding order of commitment which somehow encompassed, as part of the proceedings leading up to it, the so-called Penal Code section 1538.5 hearing, so that it could be reviewed on an appeal from the recommitment; perhaps to them it was the equivalent of a court trial (as distinguished from a jury trial) with Winfrey not raising, but conceding, the addiction issue and the court determining the entire issue and making a new commitment order;[5] perhaps it resulted in a withdrawal (as distinguished from waiver) of the demand for a jury trial with the knowledge that the execution of the original section 3106 commitment order would now be activated. We feel that the third alternative has to be the effect of the actions taken. This means that the proceeding was reinstated to its posture before the oral request for the jury was made, and the suppression session became of no consequence. It is noted that Winfrey did not appeal from the order of the superior court ruling against the motion to suppress the addiction evidence. It was not an appealable order. (Code Civ. Proc., § 904.1.)

At the lapse of the second period of suspension of the execution of the commitment order of January 14, 1969, to wit, on March 11, 1969, Winfrey appeared before the superior court. The court recognized that the second stay of execution had terminated and again uttered the commitment language contained in the original order. Winfrey then filed a written notice of appeal, which stated that the appeal was "from the Order of Commitment rendered in said Superior Court on the 4th day of March, 1969, and from the whole thereof." Actually, the true effect of the order of March 4 was to deny the motion to suppress, to recognize that the commitment order of January 14, because of the "termination"[6] of the jury trial by the withdrawal of the request therefor, would now go into effect unless there was a further extension of the suspension of its execution, and to extend the said suspension an additional seven days. As above indicated, the ruling on the motion to suppress cannot be reviewed by such a purported appeal, and Winfrey, obviously, does not desire to challenge the other aspects of the order. This defect could be fatal to Winfrey. However,

---

[5] Semantically, it does not appear that this was the consideration of respective counsel. Legally, it could not be the result. There is no right to a second hearing de novo by the court. If a decision is made adverse to the suspected addict after the section 3106 hearing, he has two choices of action: an appeal or a retrial before a jury, and only a jury. (*People* v. *Gallegos,* 4 Cal.App.3d 93, 95 [83 Cal.Rptr. 911]; *People* v. *Davis,* 273 Cal.App.2d 257, 258 [77 Cal.Rptr. 903].)

[6] The motion to suppress was, in effect, the beginning of the jury trial.

without committing ourselves to the proposition that we would take this judicial approach again, in light of the mutual misconceptions of respective counsel, apparently concurred in by the superior court, we will treat the notice of appeal as if it were from the commitment order of January 14, 1969, and as if it were timely made.[7]

 Winfrey faces one more obstacle. He failed to object at the section 3106 hearing to the addiction evidence on the ground that it was the fruit of an illegal apprehension. Ordinarily, issues such as the legality of an apprehension and the admissibility of evidence derived therefrom will not be reviewed on appeal when no objection was made at the trial level. (*People* v. *Hyde,* 51 Cal.2d 152, 157 [331 P.2d 42].) However, once more without committing ourselves to the proposition that this judicial approach would be taken again under similar circumstances, because of the mutual misconception of Winfrey's counsel and the deputy district attorney that an appellate court could review the denial of the suppression motion in the same way that it would review the denial of a Penal Code section 1538.5 motion on an appeal following a "guilty" plea in a criminal trial (Pen. Code, § 1538.5, subd. (m)), we will consider that Winfrey is not precluded from raising the legality-of-apprehension issue dealt with in the original hearing even though he did not object at the time.

 So that our ruling upon the legality-of-apprehension issue will have meaning, we recite the involved facts.

Prior to November 20, 1968, Officers Celmer and Burke of the Los Angeles Police Department had received information from some confidential informants[8] that Winfrey, his brother, and one Eddie Purdue shared an apartment and were dealing in and using narcotics. The basis of the informants' knowledge was not stated. Celmer verified that the telephone number given him by the informants was registered to Winfrey and thereby obtained his address. The apartment was placed under surveillance. Win-

---

[7]At the time of the rendition of the commitment order of January 14, Winfrey had the choice to appeal or to demand a jury trial. He chose the latter course. Unless he carried the jury trial through to its conclusion his right of appeal was gone as soon as the time for appeal elapsed. A commitment order is deemed a final judgment from which appeal could be taken under Code of Civil Procedure, section 963, subdivision 1 (repealed 1968) (*People* v. *Murphy,* 70 Cal.2d 109, 115 [74 Cal.Rptr. 65, 448 P.2d 945]), and presumably under Code of Civil Procedure section 904.1, subdivision (a) (adopted in 1968). This is not to say that it would not be appropriate or wise for the Legislature to provide a means for reviewing a legality-of-apprehension issue ahead of the trial of the addiction issue by a jury as a matter of possible judicial efficiency. But the Legislature has not, as yet, so provided.

[8]Celmer had received the information from a single informant who previously had given the officer information which resulted in arrests of two persons who were awaiting trial in the superior court. Burke had received the same information from several informants whom he described as reliable, including the one Celmer had spoken to.

frey was seen entering and leaving on two occasions in the week preceding his arrest. Through a check of police department files, Purdue was discovered to be in violation of parole from the California Rehabilitation Center. His "mug" shot was obtained. On the morning of November 20, 1968, Officer Burke was told by the informant with whom Celmer had also communicated that Winfrey and his confederates were temporarily out of narcotics but would receive a shipment in the afternoon. That afternoon Winfrey and Purdue were seen leaving their apartment and walking up the street. Because of previous activity which the officers had observed during their surveillance, they formed the opinion that Winfrey and Purdue were about to engage in a narcotics transaction. Officer Celmer approached them as they stood on a street corner. He placed Purdue under arrest for parole violation. Celmer noticed that Winfrey's eyes were contracted, that his speech was slow, that his walk was deliberate, and that there was no odor of alcohol on his breath. Celmer had had training in detecting the effects of narcotics on those under their influence. He could do so by observing the eyes, walk, speech and coordination of a suspect. Celmer concluded that Winfrey was under the influence of a narcotic. To further his investigation, Celmer asked if he could look at Winfrey's arms. Winfrey complied by rolling up his sleeves. Celmer observed tracks on both arms. He placed Winfrey under arrest for possession of narcotics. The instant proceedings were then commenced.

Winfrey contends that his apprehension was illegal. We are of the opinion that Officer Celmer's observations of Winfrey's physical characteristics, coupled with the informants' information that Winfrey was a user of narcotics, provided probable cause for his arrest on charges of possession of narcotics and for a search of his person incident thereto. (See *People* v. *Berutko*, 71 Cal.2d 84, 90-91 [77 Cal.Rptr. 217, 453 P.2d 721].)[9]

■ Winfrey urges that his waiver (withdrawal) of demand for jury trial had to be made personally. The issue of such withdrawal probably is encompassed in an appeal from the order of January 14, since it was as a result of the abandonment of the jury proceeding that its original suspension was ended. We feel that, since Winfrey failed in the first instance to make his demand for jury trial in accordance with the statutory provisions and

___

[9]As indicated, it is not the ruling of the superior court judge in department 53 which is under consideration, but that of the temporary judge. Thus, we are not concerned with the mental approach of the former. However, we add the observation that, even if the latter had had the same doubt as the former as to whether the uncontradicted observation facts would have sufficed for an arrest without the examination of Winfrey's arms, such a doubt would not bind an appellate court. (*People* v. *Towner*, 259 Cal.App.2d 682, 685 [66 Cal.Rptr. 559].) *People* v. *Henry*, 65 Cal.2d 842, 846 [56 Cal.Rptr. 485, 423 P.2d 557], is distinguishable in that it dealt with contradictory facts. By contrast we deal, essentially, with a question of law.

we did not block his attempt to have the suppression motion reviewed on this ground but did so on another, he is in no position to protest the withdrawal of the demand for a jury trial having been made by his attorney when he was present. Furthermore, the record reveals that throughout the proceedings Winfrey chose to follow the advice of his retained counsel; and it is clear that Winfrey's true interest was to secure a test of the legality of his apprehension at the level of the Court of Appeal. Such a test has been provided for him.

Finally, Winfrey contends that the submission of the issue of addiction on the report of the examining physician was ineffective absent his personal waiver of the right of confrontation. We recently decided this issue adversely to such a claim in *People* v. *Gallegos,* 4 Cal.App.3d 93, 96 [83 Cal.Rptr. 911]. It is significant that here, as in *Gallegos,* the report was not the sole evidence relative to the issue of addiction. There was, in addition, considerable personal observation testimony by the officers relative to this subject.

The judgment (order of commitment) is affirmed.

Stephens, Acting P. J., and Aiso, J., concurred.