[Crim. No. 19993. Second Dist., Div. Five. Apr. 7, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
PETER VALDIS MALINS, Defendant and Appellant.

## COUNSEL

Helen E. Simmons, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, Barbara T. King, Russell Iungerich and Frederick R. Millar, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**STEPHENS, J.**—A petition to commit the appellant as a drug addict was filed by the district attorney under the provisions of Welfare and Institutions Code section 3100.6.[1] The public defender was appointed to defend appellant, and an order setting time and place for hearing for commitment, as well as an order for appearance, were served on him. At the time of the hearing (in Dept. 95-A, superior court), appellant was represented by privately retained counsel. Appellant's motion to dismiss the petition was denied following the court's finding that there was probable cause for taking appellant into custody. Appellant was found to be a narcotic drug addict and was committed to the California Rehabilitation Center at Corona for placement as provided by law.[2] (Welf. & Inst. Code, § 3106.5.) A written request for a jury trial was filed by appellant, and the execution of the commitment order was stayed pending the outcome of the jury trial. (Welf. & Inst. Code, § 3108.) At the time of setting of the jury trial, the judge stated: "This matter is set for trial on September 3rd, a Thursday,

[1]Also filed at that time were: an application for admission of alleged narcotic drug addict to the Los Angeles County jail infirmary, signed by a police officer; an affidavit of examination and request for further examination, signed by the jail physician; and an order of detention, which granted the petition for detention filed by the district attorney.

[2]Temporary Judge Michael Berg was the trial judge at this stage of the proceedings.

at 9 a.m. in Department 1. Mr. Malins, you are ordered to return to the courthouse, First and Hill, Department 1, at 9 o'clock on September 3rd [1970], Thursday, without any further notice, order or subpoena, bail to stand. The court would advise you that in the event you fail to appear as ordered for your jury trial, you *run the risk* of loss of jury trial, since there is an outstanding commitment order that the court has made in this matter already, which order has been stayed." (Italics added.) On September 3, 1970, appellant appeared, in compliance with the court order. On motion of counsel for appellant, the court relieved him as counsel and appointed the public defender to represent appellant, the case was continued to September 16 on motion of the public defender, with appropriate waiver of time, and defendant was instructed to return on the continued date. On September 16, appellant failed to make his appearance in compliance with the court's order; bail was forfeited, and a bench warrant ordered returnable in Department 95. On or about December 24, 1970, appellant was apprehended, and on December 29, the "Matter [was] called for Hearing" (clerk's minutes), with appellant present and being represented by the public defender. An extended colloquy[3] between the court, appellant, the deputy

---

[3]The colloquy in pertinent part:

"THE COURT: What is the status of the case?

"MR. TSO [deputy district attorney]: I believe there is a commitment order in this matter having gone through a court trial, I believe.

"THE COURT: There was a request for a jury trial?

"MR. TSO: Yes, your Honor. That was scheduled for Department 1, if I recall correctly.

"THE COURT: [to appellant]: You were represented by attorney Melvin Albaum?

"THE RESPONDENT: Yes. But I didn't have no more money to pay him.

"THE COURT: The Public Defender did represent you at the time of the jury trial?

"THE RESPONDENT: I didn't have a jury trial.

"THE COURT: At the time it was set the Public Defender was representing you?

"THE RESPONDENT: Yes.

"THE COURT: Then it was called for trial in Department 1 on September 16th and you failed to appear.

"What is your reason for not appearing December 16th for your jury trial?

"THE RESPONDENT: I didn't have no—I didn't think I would win. I was getting railroaded so there was no reason for me going.

"THE COURT: So you just decided not to show up?

"THE RESPONDENT: I went to Arizona.

"THE COURT: Are there any motions made at this time?

"MR. TSO: We would ask that the order of commitment be put into full force and effect insofar as the defendant's statement with regard to his conduct constitutes a waiver of the trial by jury.

"MR. GEDGE [deputy public defender]: Your Honor, in discussing it with Mr. Malins, I think he has requested there be a hearing on this matter, the reasons behind it.

"THE COURT: That is what I am conducting right now. I am asking him what his reasons were and he told the court what his reasons were and I am asking if there is anything further.

"MR. GEDGE: I would like to get the hearing continued because I haven't had a chance to speak to him at all. I have no idea what his reasons were.

district attorney, and counsel for appellant ensued, culminating in a determination by the court that, by having failed to appear at the time set for the jury trial, the appellant had waived his right to trial by jury; the

"THE COURT: I will give you a short recess to do that. I have asked him his reasons and he stated them in open court. I will give you a chance to interview him and will trail the matter.

". . . . . . . . . . . . . . . . .

"MR. FREEMAN [deputy public defender] [in an offer of proof]: Your Honor, I could call Mr. Malins as a witness and he would testify that to the best of his knowledge he was not advised if he failed to appear for the jury trial that it would be a waiver of that jury trial and he has also indicated to me that had he known that he would have appeared.

". . . . . . . . . . . . . . . . .

"[Direct examination of appellant by Mr. Freeman]: Q On or before September 16th had anybody told you that if you failed to appear that that would be a waiver of a jury trial, in other words, that you would not get one?

"A No.

"Q Had you known that would you have appeared?

"A Yes.

"Q Why didn't you appear on September 16th?

"A My wife—I don't know—I was scared. My wife was in Arizona pregnant so I just went there to live with her.

"Q You think you would have done that if you had known about the waiver of the jury trial?

"A. No. I thought I was entitled to the jury trial when I came back. That's what I was always taught. No matter what, you are always entitled to a jury trial. I am not familiar with civil law.

"THE COURT: Mr. Malins, . . . this morning, when I asked you why you left and didn't appear for the jury trial, you said you thought that it would be useless, that you would be found an addict and that you left because you didn't want to appear for that reason. Didn't you tell the court that this morning?

"THE WITNESS: Yes.

"THE COURT: You thought you didn't have a chance?

"THE WITNESS: Yes.

"THE COURT: In other words, the cards were stacked against you and the jury would find you an addict and there was no use to bother to go through it . . .

"THE WITNESS: I didn't mean it like that. I thought even when they did catch me I thought I was entitled to a jury trial.

"THE COURT: In other words, you thought you could run off, stay off as long as you wanted, until they caught you and brought you back and you would be entitled to a jury trial at that time?

"THE WITNESS: Yes.

"THE COURT: Whatever gave you that idea?

"THE WITNESS: That's what I was taught in school. They say you are entitled to a jury trial. ·

". . . . . . . . . . . . . . . . .

"BY MR. Tso [on cross-examination]: Mr. Malins, on August 12, 1970, you were represented in Department 95A . . . by Mel Albaum . . . at a hearing . . .?

"A Yes.

". . . . . . . . . . . . . . . . .

"Q [When you were committed . . . . Do you recall . . . . signing a request [for trial by jury at that time]?

"A Yes.

"Q Do you recall [the judge] at that time stating and ordering you to report to Department 1 at 9:00 a.m. on September 3rd, 1970?

commitment order of August 12, 1970 which had been stayed pending trial by jury was activated; and appellant was remanded to the custody of the sheriff for delivery to Corona. Appellant appeals "from the judgment rendered against him on *August 12, 1970.*"

The People argue that appellant's notice of appeal (filed on December 29, 1970) "from the judgment rendered against him on August 12, 1970" is untimely as the time for appeal had lapsed, citing *People* v. *Winfrey,* 13 Cal.App.3d 818, 825, footnote 7 [92 Cal.Rptr. 33]. In the cited *Winfrey* footnote, we stated that at the time of the rendition of a commitment order, the person committed has the choice to appeal or to demand a jury trial, and *unless he carries the jury trial through to its conclusion,* his right of appeal dissipates upon expiration of the appeal period. We recognize that the cited *Winfrey* footnote was not a necessary holding to that case; it is not improper, therefore, to extend the thought that we had intended to express therein, in the instant case, where our holding is adjudicative of the question. In *Winfrey* (p. 825, fn. 7), we said: "Unless [the person committed] carried the jury trial through to its conclusion his right of appeal was gone as soon as the time for appeal elapsed." This is true as it relates to the issue of addiction (which includes issues of sufficiency of the evidence and admissibility of evidence,[4] as well as all other aspects of the commitment process.)[5] The *Winfrey* statement, however, was intended to encompass the requirement for a "knowingly and intelligently" made waiver of

---

"A Yes.

"Q Do you remember him admonishing you that your non-appearance on that date could be construed as a waiver of your right to a trial by jury?

"A No. I remember him saying that for me not to leave, that I had been committed already. But I don't recall him telling me that it would waive my right to jury trial.

"MR. TSO: . . . We ask the court to take judicial notice of the minute order of August 12, 1970.

"THE COURT: Stating that [the judge there] stated that the respondent is ordered to report to Department 1 at 9:00 a.m. on September 3rd, 1970, and is admonished by the court that his nonappearance on that date could be construed as a waiver to his right to a trial by jury?

"MR. TSO: Yes. We ask the court to take judicial notice of the order.

"THE COURT: Judicial notice will be taken of it.

". . . . . . . . . . . . .

"THE COURT: The court specifically finds that Mr. Peter Malins, by his actions on September 16, 1970, waived his right to a jury trial and the commitment order made by this court on August 12, 1970, committing him to the Director of Corrections to be placed in the California Rehabilitation Center at Corona for treatment is placed now in full force and effect.

"He is remanded to the Sheriff to be delivered to Corona."

[4]*People* v. *Bourdon,* 10 Cal.App.3d 878, 881 [89 Cal.Rptr. 415].

[5]We do not mean to say that fundamental issues involved in the original commitment hearing could not be raised by way of appropriate writ action.

the jury trial after trial by jury had once been demanded.[6] In *People* v. *Davis,* 273 Cal.App.2d 257, 258 [77 Cal.Rptr. 903], the court was careful to note that "[a]t the opening of that hearing [jury trial], defendant, personally, his counsel, and the deputy district attorney, waived jury trial by a procedure that followed explicity the procedure for waiver of a jury trial in a criminal case." ■ Certainly there can be no question that an appeal from the original commitment order may be taken if noticed within the period of time provided therefor, and this would be true whether or not a demand for jury trial was made, providing such an appeal was filed with the acquiescence of the committed person if made *after* demand for jury trial. (For the effect of an appeal filed *prior* to a demand for jury trial, see *People* v. *Murphy, supra,* and fn. 6 herein, *supra.*) ■ Such appeal would effectuate the abandonment of the jury demand, as well as divest the trial court of further jurisdiction to adjudicate the issue of addiction. Any such abandonment of the right to jury trial of that issue, however, must be knowingly and intelligently made. ■ The guaranty of review of the commitment adjudication of addiction is preserved by appeal from that order or a jury determination thereof and the right of appeal from that determination. The "protective" route available to a committed person may be chosen by the filing of the appeal from the original commitment order, so long as such appeal is not in direct violation of the expressed direction of the committed person.

In the instant case, although appellant requested a jury trial and there was no express waiver by appellant or his counsel of appellant's right to a trial by jury, the court precluded appellant from "carr[ying] the jury trial through to its conclusion" by its December 29, 1970 determination to activate the commitment order after it "specifically [found] that Mr. Peter Malins, *by his actions* [*non-appearance*] *on September 16, 1970,* waived his right to a jury trial." (Italics added.) While it may be advantageous to expedite commitment proceedings by a court declaration that failure to appear at the time set for the jury trial constitutes a waiver thereof, there is no statutory authority for such imposition of waiver. It may be argued that proceedings under (Welf. & Inst. Code) section 3100 et seq., being civil in nature though closely identified with certain aspects of criminal law (protecting the person accused), are governed by procedures applicable to civil matters. (*People* v. *Bourdon,* 10 Cal.App.3d 878, 882 [89 Cal.Rptr. 415].) ■ If we were to apply this principle to the fullest

---

[6]*People* v. *Davis,* 273 Cal.App.2d 257, 258 [77 Cal.Rptr. 903] holds that a de novo jury trial once demanded may be withdrawn. Such demand for jury trial does not void the commitment order, but only suspends its effectiveness; the court's jurisdiction over the case is not divested, as in the taking of an appeal. (*People* v. *Murphy,* 70 Cal.2d 109, 116 [74 Cal.Rptr. 65, 448 P.2d 945].)

extent, Code of Civil Procedure section 631, subdivision 1[7] would effectuate a waiver of the right to jury trial in the instant case. However, specific procedural provisions governing involuntary civil commitment proceedings patently manifest the requirement of protection of the individual beyond the protection afforded by normal Civil Procedure provisions. (See *People v. Moore,* 69 Cal.2d 674, 681 [72 Cal.Rptr. 800, 446 P.2d 800].)[8] Section 3108 provides that "the person so committed [after hearing before a judge without a jury (§ 3106)] . . . may . . . file a written demand that the question of his addiction or imminent danger of addiction be tried by a jury . . . The trial shall be had as provided by law for the trial of civil cases . . . [¶] The person committed shall be awarded all his constitutional rights including, but not limited to, his right to counsel, his right to notice of the nature of the proceedings brought against him, his right to the process of the court to compel the attendance of witnesses in his behalf, and his right to be confronted with witnesses." It has been held that this last paragraph does not include the right to exclude statements made to an examining physician though the statements are made without the prior warning prescribed by the *Miranda* rule (*People v. Garcia,* 268 Cal.App.2d 712, 716 [74 Cal.Rptr. 103]),[9] and that the person is not entitled to the presence of a lawyer at the time of such examination (*People v. Candalaria,* 18 Cal.App.3d 754 [96 Cal.Rptr. 90]). It does, however, require the personal waiver of the procedural framework of the commitment process. (*In re Jones,* 61 Cal.2d 325, 330 [38 Cal.Rptr. 509, 392 P.2d 269].) And, in *In re Cruz,* 62 Cal.2d 307 [42 Cal.Rptr. 220, 398 P.2d 412], the court listed the necessary elements of a valid waiver under now section 3107.[10]

---

[7]Code of Civil Procedure, section 631, subdivision 1: "Trial by jury may be waived by the several parties to an issue of fact in manner following: 1. By failing to appear at the trial. . . ."

[8]"[T]he state is the defendant's opponent, . . . the proceeding is commenced on petition of the district attorney (Welf. & Inst. Code, §§ 3100, 3100.6), . . . the defendant is entitled to be present at the hearing and to be represented by counsel at all stages of the proceeding (Welf. & Inst. Code, § 3104), . . . if he is financially unable to employ counsel he is entitled to appointed counsel (Welf. & Inst. Code, § 3104) and . . . his liberty is at stake. On the basis of these considerations, we have recognized the criminal features of the proceeding and held that persons involuntarily committed to the program have the right to a free transcript on appeal, a rule ordinarily applied in criminal cases. (*People v. Victor,* 62 Cal.2d 280, 288-289 [42 Cal.Rptr. 199, 398 P.2d 391].)"

[9]See also section 3100.6, which provides: "No evidence of violations of [Health & Saf. Code] Sections 11500, 11530 and 11721 . . . found during the examination authorized by this section shall be admissible in any criminal proceeding against the person."

[10]Section 3107: "Hearing may be waived by consent of the person, expressed in open court or in writing by the person after the arraignment required by section 3104 and after consultation with counsel."

In *In re Walker*, 71 Cal.2d 54, 57 [77 Cal.Rptr. 16, 453 P.2d 456], the court said: "The first requirement of any waiver of statutory or constitutional rights, of course, is that it be knowingly and intelligently made. Such a showing is difficult enough in an ordinary criminal case, . . .; it is even more difficult when the person purporting to make the waiver is in an altered physiological or psychological state, the characteristic of all narcotics addicts [Citation]." In *In re Gary W.*, 5 Cal.3d 296, 307 [96 Cal.Rptr. 1, 486 P.2d 1201], the court stated: "In extending the right to trial by jury to other classes of persons subject to civil commitment proceedings, the California Legislature has recognized that the interests involved in civil commitment proceedings are no less fundamental than those in criminal proceedings and that liberty is no less precious because forfeited in a civil proceeding than when taken as a consequence of a criminal conviction. We conclude that in the absence of a compelling state purpose for the distinction between the class of persons subject to commitment pursuant to [Welf. & Inst. Code] section 1800 and to other classes of persons subject to involuntary confinement, the right to jury trial is a requirement of both due process of law and equal protection of the law."

We therefore conclude that the provision for waiver of right to jury trial contained in Code of Civil Procedure section 631 is inapplicable in the instant proceedings for involuntary civil commitment.

We feel that the injury to defendant resulting from the erroneous determination by the court on December 29, 1970, was compounded by the error of defendant's court-appointed counsel, who inadvertently or otherwise appealed from the August 12, rather than the December 29, order, thereby impliedly at least acquiescing in the misconception of the court and the deputy district attorney that appellant had effectively waived his right to trial by jury by the fact of his nonappearance.

In these unique circumstances, in the interests of justice we feel constrained to treat appellant's appeal as a timely appeal from the court's ruling of December 29. We therefore requested argument of counsel on the issue of the effectiveness of the purported waiver of trial by jury, and for the reasons hereinafter set forth, we conclude that the commitment order must be restored to its posture as of the time of appellant's request for trial by jury.

As stated in *In re Walker, supra*, 71 Cal.2d 54, 57: "It is settled that jurisdiction to enter an order of commitment depends on strict compliance with each of the specific statutory prerequisites for maintenance of the proceeding. [Citations.] There being no such compliance in the case at bar, the commitment was invalid unless it was saved by petitioner's pur-

ported waiver." *Walker* continues with an analysis of the prerequisites for a "knowingly and intelligently" made waiver. (See also *In re Cruz,* 62 Cal. 2d 307, 312-313 [42 Cal.Rptr. 220, 398 P.2d 412].) ■ Even a cursory reading of the colloquy set out in footnote 3, *supra,* establishes beyond question that defendant made no waiver of his statutory right to a jury determination of the issue of whether he is an addict, or of the issue of probable cause. (*People* v. *Bourdon,* 10 Cal.App.3d 878, 881 [89 Cal.Rptr. 415].) We note also that not only did appellant contest below the determination that he had waived his statutory right to jury trial, but the original court admonition to him ("*you run the risk* of loss of jury trial") falls far short of the certainty of a declaration that appellant *would* lose his right to jury trial if he failed to appear. Were we to hold other than that there was no waiver here, the concomitant result would be that appellant would be denied his protective guaranty, i.e., the right to rehearing de novo by a jury, or a right of appeal from the court-ordered commitment, and judicial conscience does not permit of such a result.

The order activating the original order of commitment is reversed, and the cause is remanded to the superior court for further proceedings in conformity with this opinion.

Kaus, P. J., concurred.

**AISO, J.,** Concurring and Dissenting.—The portion of Welfare and Institutions Code section 3108 pertinent to this case reads: "If the person so committed . . . is dissatisfied with the order of commitment, he may within 10 days after the making of such order, file a written demand that the question of his addiction or imminent danger of addiction be tried by a jury in the superior court of the county in which he was committed. Thereupon, the court shall cause a jury to be summoned and to be in attendance at a date stated, not less than 4 days nor more than 30 days from the date of the demand for a jury trial." This is a statutory right which comes into play only when the person ordered committed chooses to request it. (*People* v. *Murphy* (1969) 70 Cal.2d 109, 117, 119 [74 Cal.Rptr. 65, 448 P.2d 945].) It is, therefore, something in the nature of a lateral appeal to a new trier of fact. It is not an initial judicial determination of facts. The second sentence from section 3108 quoted above has been held to mean that the jury trial must be held within 30 days (*People* v. *Murphy, supra,* 70 Cal.2d 109, 118, fn. 7), subject (I would add) to exception where good legal cause is shown. I would construe this time limitation to be applicable to the person requesting the jury trial as well as to the People. Where the trial is not held within the 30-day period because the person ordered committed runs away

and becomes "a fugitive," I would rule that he forfeits his right to further pursue this statutory remedy.

However, I think that the person who demands the jury should be warned of this possible forfeiture; the warning in the instant case having failed to cover this construction of section 3108, I join in the judgment reversing the trial court's order which reinstated and ordered into execution the original order of commitment.

Respondent's petition for a hearing by the Supreme Court was denied May 31, 1972. Burke, J., was of the opinion that the petition should be granted.